UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER KOPECK, individually and on behalf of other persons similarly situated, *Plaintiff*, v. TIVOLI ENTERPRISES, INC., *Defendant*. | Case No.: 25-cv-4554 JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiff Jennifer Kopeck brings this action individually and on behalf of all others similarly situated against Tivoli Enterprises, Inc. ("Defendant"). Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

### INTRODUCTION

1. This is a class action suit brought against Defendant for violations of the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. *et seq*, which prohibits the disclosure of consumers' video viewing history without their informed, written consent.

2. Defendant is a cinema chain that develops, owns, and operates the website classiccinemas.com, where consumers can watch movie trailers and purchase tickets to movie screenings at various of Defendant's movie theater locations.

3. Defendant has installed the Meta Tracking Pixel on its website to secretly and surreptitiously send consumers' personally identifiable information ("PII") to Meta Platforms, Inc. ("Meta" or "Facebook"). As shown below, when a consumer watches a movie trailer on

1

Defendant's website, Defendant discloses the title of the movie, and the consumer's personally identifiable information to Meta. Because Defendant discloses this and other sensitive data about consumers without their written consent, it violates the VPPA.

4. Accordingly, Plaintiff brings this action to redress and put a stop to Defendant's practices of knowingly disclosing PII to third-parties in violation of the VPPA.

## PARTIES

5. Plaintiff is an individual who resides in this District and is a citizen of Illinois.

6. Defendant is an Illinois corporation that conducts substantial business in this District.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under a law of the United States.

8. This Court has personal jurisdiction over Defendant because Defendant is headquartered in and operates its business in this District.

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## FACTUAL ALLEGATIONS

### A. The VPPA

10. The VPPA prohibits "[a] video tape service provider [from] knowingly disclos[ing], to any person, personally identifiable information concerning any consumer of such provider." 18 U.S.C. § 2710(b)(1).

11. The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video service provider." 18 U.S.C. § 2710(a)(3).

12. A video tape service provider is "any person, engaged in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

13. Further, the act defines a "consumer" as "any, renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1).

14. In 2012, Congress amended the VPPA, and in so doing, reiterated the Act's applicability to "so-called 'on-demand' cable services and internet streaming services [that] allow consumers to watch movies or TV shows on televisions, laptop computers, and cell phones." S. Rep. No. 112-259, at 2.

15. Thus, the VPPA applies to video steaming service providers, such as Defendant, and its website through which consumers watch video content.

B. Defendant's Website and Its Use of the Meta Pixel

16. Defendant owns and operates Classic Cinemas, which is a movie theater chain. Defendant also operates classiccinemas.com (the "Website"), a website where moviegoers can purchase movie tickets, watch movie trailers, and learn about what is in theaters.

17. Defendant offers consumers the option to subscribe to Classic Rewards, a program that Defendant offers which allows consumers to earn discounts on Defendant's products.[1]

18. Importantly, while creating their accounts to Classic Rewards or when purchasing a ticket, consumers are not specifically asked to consent to Defendant sharing and disclosing their

---

[1] https://www.classiccinemas.com/classic-rewards (visited Apr. 25, 2025)

PII to third parties, including information which identifies them as having viewed specific video content.

19. Despite not obtaining informed, written consent from their subscribers or purchasers which is distinct and separate from any form setting forth other legal obligations, Defendant discloses their PII to various third parties.

20. Specifically, Defendant's website shows that Defendant discloses their subscribers' and purchasers' PII by utilizing tracking pixels and similar tracking technologies such as the Meta Pixel.

21. The Meta Pixel is a piece of code that online media providers, like Defendant, can integrate into their websites. Once activated, the Meta Pixel tracks the people and the type of actions they take on the website and disseminates that information to Facebook. Therefore, when one of their subscribers' or purchasers' requests to watch a video on Defendant's website, the Meta Pixel sends that video request, along with the consumer's identity, to Facebook.

22. But Defendant does not simply disclose that any generic consumer watched the movie trailer. Instead, if that consumer visits Defendant's website on the same web browser used to log into Facebook, then Defendant also compels the consumer's browser to transmit an identifying "computer cookie" to Meta called "c_user". The c_user cookie contains that consumer's unencrypted Facebook ID. This data transmission can be observed by accessing the developer tools (by pressing the F12 key on a keyboard) and viewing the network activity.

23. For example, if a consumer were to navigate to Defendant's webpage for the movie "Black Bag" at https://www.classiccinemas.com/f/black-bag/1706 (visited Apr. 25, 2025) and watch the trailer thereon, Defendant would disclose that information in the form of a URL request (as shown below), along with the identification of the subscriber/purchaser:

4

| | |
|---|---|
| :authority: | www.facebook.com |
| :method: | GET |
| :path: | /privacy_sandbox/pixel/register/trigger/?id=2191709210878293&ev=SubscribedButtonClick&dl=https%3A%2F%2Fwww.classiccinemas.com%2Ff%2Fblack-bag%2F1706%3Ftab%3Dnow-showing&rl=&if=false&ts=1741971468342&cd[buttonFeatures]=%7B%22classList%22%3A%22br_poster%20program-movie-trailer-button%22%2C%22destination%22%3A%22%22%2C%22id%22%3A%22%22%2C%22imageUrl%22%3A%22https%3A%2F%2Fimages.filmgrail.com%2Fplay-button.svg%3Foptimizer%3Dimage%22%2C%22innerText%22%3A%22%22%2C%22numChildButtons%22%3A0%2C%22tag%22%3A%22img%22%2C%22type%22%3Anull%7D&cd[buttonText]=&cd[formFeatures]=%5B%5D&cd[pageFeatures]=%7B%22title%22%3A%22Black%20Bag%22%7D&sw=1536&sh=960&v=2.9.187&r=stable&ec=2&o=12318&fbp=fb.1.1738782355770.473756713582289070&ler=empty&it=1741971453222&coo=false&es=automatic&tm=3&cdl=&exp=k0&rqm=FGET |
| :scheme: | https |
| Accept: | image/avif,image/webp,image/apng,image/svg+xml,image/*,*/*;q=0.8 |
| Accept-Encoding: | gzip, deflate, br, zstd |
| Accept-Language: | en-US,en;q=0.9 |
| Attribution-Reporting-Eligible: | trigger, event-source |
| Attribution-Reporting-Support: | web;os |
| Cookie: | datr=kconZx-GKxRXVFQOkXT_G59U; ps_n=1; sb=MLajZ5pq2MjfEut8qNB_TKS1; dpr=1.25; c_user=100088380039089; xs=30%3AjrtUX_yJNMZVLA%3A2%3A1741971435%3A-1%3A-1; fr=1iBXRcvj488zRunqS.AWV4eaJ1_15tv7RaH2xw-gWfX26d_RtKWiZ44Q.Bnplyz..AAA.0.0.Bn1F_u.AWUFpFw9t1s; ar_debug=1 |

24. The c_user cookie is personally identifiable information because it contains a consumer's unencrypted Facebook ID. A Facebook ID allows anybody—not just Facebook—to identify the individual consumer.

25. Specifically, if one types https://www.facebook.com/profile.php?id=[FacebookID] into a web browser, it will load that individual's Facebook page.

26. For example, the c_user cookie in the figure above is 100088380039089, and https://www.facebook.com/profile.php?id=100088380039089 leads to the counsel of record's Facebook page.

27. A Facebook ID is personally identifiable information. Anyone can identify a Facebook profile – and all personal information publicly listed on that profile – by appending the Facebook ID as described above.

5

28. Through the Meta Tracking Pixel's code, these cookies combine the identifiers with the event data, allowing Meta to know, among other things, that a given consumer watched a particular movie trailer.[2]

29. Defendant discloses these identifiers so Meta can match them with a corresponding Facebook profile. By compelling a visitor's browser to disclose these cookies, Defendant knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's movie viewing behavior.

30. Meta confirms that it matches activity on Defendant's website with a user's profile. Meta allows users to download its "off-site activity," which is a "summary of activity that businesses and organizations share with [it] about [consumers'] interactions, such as visiting [organizations'] apps or websites."[3] The off-site activity report confirms Defendant identifies an individual's viewing activities.

---

[2] FACEBOOK, GET STARTED, https://developers.facebook.com/docs/meta-pixel/get-started (visited Apr. 25, 2025).

[3] FACEBOOK, WHAT IS OFF-FACEBOOK ACTIVITY?, https://www.facebook.com/help/2207256696182627 (visited Apr. 25, 2025). As discussed there, the Off-Facebook Activity is only a "summary" and Facebook acknowledges "receiv[ing] more details and activity than what appears in your Facebook activity." What is more, it omits "information we've received when you're not logged into Facebook, or when we can't confirm that you've previously used Facebook on that device."



31. As Meta explains in the figure below, companies like Defendant share with Meta information so that Defendant "may use [this] customer interaction to create a unique group of customers in order to show them relevant ads."



**C. Defendant's Failure to Obtain Consent**

32. While Defendant has been disclosing consumers' PII to Meta, it has not obtained consumers' consent as required under the VPPA.

33. The VPPA only allows a video tape service provider to disclose PII of a consumer to a third party "with the informed, written consent (including through an electronic means using the Internet) of the consumer that—(i) is in a form distinct and separate from any form setting forth other legal or financial obligations to the consumer." 18 U.S.C. § 2710(B)(i). The video tape service provider must also "provide[] an opportunity, in a clear and conspicuous manner, for the consumer to withdraw on a case-by-case basis or to withdraw from ongoing disclosures, at the consumer's election." 18 U.S.C. § 2710(B)(iii).

34. Defendant failed to meet this informed written consent requirement under the VPPA because at no point did Defendant obtain informed, written consent, in a separate and distinct form.

### D. Plaintiff's Experience

35. Plaintiff is a subscriber to Defendant's Classic Rewards program.

36. In the last two years, Plaintiff has visited classiccinemas.com to view various movie trailers, where she has also purchased tickets to watch movies at one of Defendant's brick and mortar cinemas.

37. Plaintiff has a Facebook page that contains her real name and photos.

38. When Plaintiff watched movie trailers on Defendant's Website, classiccinemas.com, Defendant disclosed the movie's title and disclosed identifiers for Plaintiff including the c_user cookies to Meta.

39. According to Plaintiff Kopeck's off-site activity report below, classiccinemas.com has disclosed her event data to Meta on at least one occasion.



40. By disclosing her event data and identifiers, Defendant disclosed Plaintiff's personally identifiable information to Meta and Plaintiff's personal information and video viewing data to Meta.

**CLASS ALLEGATIONS**

41. Plaintiff brings this action individually and on behalf of similarly-situated individuals and seek to certify a class defined as follows:

10

> All individuals in the United States who watched movie trailers on classiccinemas.com, who had a Facebook account, and who either subscribed to Defendant's rewards program or purchased a movie ticket from Defendant.

42. Excluded from the Class are any members of the judiciary assigned to preside over this matter; any officer or director of Defendant; and any immediate family member of such officers or directors.

43. Upon information and belief, there are hundreds of members of the Class, making the members of the Class so numerous that joinder of all members is impracticable. Although the exact number of members of the Class is currently unknown to Plaintiff, the members can be easily identified through Defendant's records.

44. Plaintiff's claims are typical of the claims of the members of the Class she seeks to represent, because the factual and legal bases of Defendant's liability to Plaintiff and the other members are the same, and because Defendant's conduct has resulted in similar injuries to Plaintiff and to the Class. As alleged herein, Plaintiff and the Class have all suffered damages as a result of Defendant's VPPA violations.

45. There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members. Common questions for the Class include, but are not limited to, the following:

    (a) whether Defendant collected Plaintiff's and the Class's PII;

    (b) whether Defendant unlawfully disclosed and continues to disclose consumer's PII in violation of the VPPA;

    (c) whether Defendant's disclosures were committed knowingly; and

(d) whether Defendant disclosed Plaintiff's and the Class's PII without informed written consent as defined under the VPPA.

46. Absent a class action, most members of the Class would find the cost of litigating their claims to be prohibitively expensive and would thus have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions in that it conserves the resources of the courts and the litigants and promotes consistency of adjudication.

47. Plaintiff will adequately represent and protect the interests of the members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

48. Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the other members of the Class, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## COUNT I
### Violation of the Video Privacy Protection Act
### 18 U.S.C. § 2710, *et seq.*

49. Plaintiff incorporates by reference each of the preceding allegations as though fully set forth herein.

50. Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant.

51. Defendant is a "video tape service provider" because it displays movie previews to consumers on its website, thereby "engag[ing] in the business, in or affecting interstate or foreign

commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials." 18 U.S.C. § 2710(a)(4).

52. Plaintiff is a consumer under the VPPA because she is a "renter, purchaser, or subscriber of goods or services from a video tape service provider." 18 U.S.C. § 2710(a)(1). Plaintiff is a "consumer" under the VPPA as she viewed prerecorded content through Defendant's website, subscribed to Defendant's rewards program, and purchased movie tickets from Defendant.

53. Defendant disclosed to a third party, Facebook, Plaintiff's and Class members' personally identifiable information. Defendant utilized the Meta Tracking Pixel to compel Plaintiff's web browser to transfer Plaintiff's identifying information, like her Facebook ID, along with Plaintiff's event data, like the title of the videos she viewed.

54. Defendant knowingly disclosed Plaintiff's PII because it elected to incorporate the Meta Tracking Pixel into its website and used that data to build audiences on Facebook and retarget them for its advertising campaigns.

55. Plaintiff and Class members did not provide Defendant with any form of consent – either written or otherwise – to disclose their PII to third parties.

56. Nor were Defendant's disclosures made in the "ordinary course of business" as the term is defined by the VPPA. In particular, Defendant's disclosures to Facebook were not necessary for "debt collection activities, order fulfillment, request processing, [or] transfer of ownership." 18 U.S.C. § 2710(a)(2).

57. On behalf of herself and the Class, Plaintiff seeks: (i) declaratory relief; (ii) injunctive and equitable relief as is necessary to protect the interests of Plaintiff and the Class by requiring Defendant to comply with VPPA's requirements for protecting a consumer's PII; (iii)

statutory damages of $2,500 for each violation of the VPPA pursuant to 18 U.S.C. § 2710(c); and (iv) reasonable attorneys' fees and costs and other litigation expenses.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the proposed Class, prays for judgment as follows requests that this Court enter an Order:

a. Certifying the Class as defined above, appointing Plaintiff as class representative and the undersigned as class counsel;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

d. For compensatory and statutory damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h. For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: April 25, 2025        Respectfully Submitted,

                              JENNIFER KOPECK, individually and on behalf of similarly situated individuals

                    By:    /s/ *William H. Beaumont*

                              *One of Plaintiff's Attorneys*

William H. Beaumont (#6323256)
Aaron S. Welo (#6341591)
BEAUMONT LLC
107 W. Van Buren, Suite 209
Chicago, IL 60605
Telephone: (773) 832-8000
whb@beaumont-law.com
asw@beaumont-law.com

*Attorneys for Plaintiff and the Putative Class*